**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
**Attorneys at Law**
1200 SMITH STREET, SUITE 1400
**HOUSTON, TEXAS 77002-4496**
(713) 658-1818 (800) 342-5829
(713) 658-2553 (FAX)
chwwm@chamberlainlaw.com

C. LARRY CARBO, III
SHAREHOLDER
DIRECT DIAL NO.(713) 356-1712
E-MAIL: larry.carbo@chamberlainlaw.com

HOUSTON
ATLANTA
PHILADELPHIA
SAN ANTONIO

September 29, 2017

The Honorable Daniel J. Stewart
U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, 4th Floor
Albany, New York 12207

Re: *Holick, et al. v. Cellular Sales of New York, LLC, et al.*; Case No. 1:12-cv-00584 (NAM/DJS) ("Lead Case"); Case No. 1:13-cv-00738 (NAM/DJS) ("Member Case")

Dear Judge Stewart:

This letter motion is submitted on behalf of Defendants Cellular Sales of Knoxville, Inc. and Cellular Sales of New York, LLC (collectively "Cellular Sales"). We respectfully request a conference to address Plaintiffs' failure to comply with discovery obligations.

Cellular Sales requests that the Court: (1) compel Plaintiffs to respond fully and truthfully to Defendants' First Set of Interrogatories; (2) compel Plaintiffs to produce all documents responsive to Defendants' First Requests for Production; and (3) compel Holick to produce certain communications responsive to Request No. 12 and No. 13 of Defendants' Third Requests for Production.

Cellular Sales conferred with Plaintiffs' counsel, including by telephone, correspondences, and email, and engaged in good faith efforts to resolve these disputes without avail. (*See* Exhibit A, 08/16/17 letter to Plaintiffs' counsel). Accordingly, Cellular Sales submits these issues for Your Honor's resolution.

**Introduction**

This lawsuit was filed by seven named Plaintiffs. On or about February 26, 2014, the case was conditionally certified as a collective action of potential opt-in plaintiffs who did not sign arbitration agreements. (Member Case, Docs. 74, 83, 85). Fifteen individuals opted into the lawsuit ("first class of Opt-In Plaintiffs"). In addition, on or about October 21, 2015, the parties agreed to conditional certification consisting of individuals who signed arbitration agreements. (Lead Case, Doc. 95). Thirty-two individuals opted into the lawsuit ("second class of Opt-In Plaintiffs"). The Named Plaintiffs and the first class of Opt-In Plaintiffs are collectively referred to herein as "Plaintiffs."

In this lawsuit, Plaintiffs allege Cellular Sales required them to form limited liability companies ("Sales Companies") to contract with Cellular Sales. Plaintiffs then claim Cellular Sales misclassified their Sales Companies as independent contractors and failed to pay Plaintiffs overtime and minimum wage in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law. (Lead Case, Doc. 80).

Cellular Sales contends Plaintiffs' Sales Companies were properly classified as independent contractors and Plaintiffs were employees of their Sales Companies, and not Cellular Sales. (Lead Case, Docs. 180, 182). Cellular Sales submits the evidence will show that, consistent with the parties' agreements, Plaintiffs had and, in many cases exerted, significant discretion and control in operating their Sales Companies and performing the services, including complete discretion in advertising the services, deciding when and where to perform the services, and in hiring other workers to perform the services. Thus, the manner in which Plaintiffs operated the Sales Companies is critical to the resolution of this lawsuit.

To date, Cellular Sales has taken the depositions of twelve Plaintiffs and has served written discovery on each Plaintiff.[1] However, the depositions have revealed that Plaintiffs failed to comply fully with Cellular Sales' First Set of Requests for Production and First Set of Interrogatories. Many Plaintiffs admitted at their depositions that **they made no effort to search for or preserve responsive documents.** Other Plaintiffs indicated that they had responsive documents, but that those documents had not been produced. The depositions have also revealed that many Plaintiffs failed to respond truthfully to interrogatories.

The fact that the depositions have revealed so many Plaintiffs failed to comply with their basic discovery obligations raises serious concerns about the discovery responses and document production of the other Plaintiffs. Accordingly, Cellular Sales requests the Court instruct Plaintiffs to respond fully to the discovery requests and produce all responsive documents.

In addition, Jan Holick, a named plaintiff, is withholding communications responsive to Request No. 12 and Request No. 13 of Cellular Sales' Third Set of Requests for Production. Holick refuses to produce his relevant communications with sales representatives who did not join this lawsuit. Holick also refuses to produce his communications with other named Plaintiffs regarding the services at issue. Holick's objections lack merit. Discussions regarding the manner in which Plaintiffs performed the services are highly relevant to the independent contractor issue. Accordingly, Cellular Sales requests the Court overrule Holick's objections and order Holick to produce the documents and communications identified more specifically below.

---

[1] Cellular Sales has taken the depositions of two named plaintiffs, Jan Holick and Jason Mack, and ten opt-in plaintiffs, Charlene Noel, Andrew Bittel, Martina Corbelli, Chantel Winkler, Jaquennette Harris, James Harrington, Daniel Becker, Kevan McDonald, Julie Miller, and Henry Lopez.

## Argument & Authorities

### I. The Depositions Have Revealed That Many Plaintiffs Are Withholding Responsive Documents and Have Failed to Provide Accurate Interrogatory Responses

The Court should compel Plaintiffs to respond fully to Defendants' First Set of Interrogatories and produce all documents responsive to Defendants' First Requests for Production. In September of 2014, Cellular Sales served their first requests for production and interrogatories on the Named Plaintiffs and the first class of Opt-In Plaintiffs. Most of them served responses to the discovery requests on September 25, 2015.[2] On August 2, 2016, Cellular Sales served nearly identical document requests and interrogatories on the second class of Opt-In Plaintiffs. The second class served responses on October 21, 2016. As shown below, while Plaintiffs purported to respond to these discovery requests and produce responsive documents, the recent depositions have revealed that, in many instances, Plaintiffs failed to provide important documents and pertinent information.

#### A. Cellular Sales requested relevant documents showing the manner in which Plaintiffs operated their Sales Companies and performed the services at issue.

Cellular Sales' first sets of discovery requests sought basic information regarding Plaintiffs' claims that Cellular Sales misclassified Plaintiffs as independent contractors. For example, to discover information regarding the manner in which Plaintiffs operated their Sales Companies, RFP No. 12 to the Opt-In Plaintiffs requested documents showing the services that Plaintiffs' Sales Companies performed for entities or individuals other than Cellular Sales:

> All documents showing services performed by your Sales Company for any business entity or individuals other than Cellular Sales, including, but not limited to, all contracts your Sales Company entered into, all Forms 1099 relating to your Sales Company, all invoices issued by your Sales Company, and all documents showing any payments your Sales Company received from any other business entity or individuals.

Cellular Sales also requested documents showing the other jobs Plaintiffs and their Sales Companies performed as an independent contractor and "[a]ll contracts between your Sales Company and any individual or entity other than Cellular Sales." (RFP Nos. 38-41). Similarly, Cellular Sales' first set of interrogatories asked each Plaintiff to identify "every company or individual for whom you or your Sales Company has performed services as an independent contractor," "any position as an independent contractor for which you or your Sales Company has applied," and "all individuals or entities for whom your Sales Company has performed any

---

[2] A sample of the requests for production served on the first class of Opt-In Plaintiffs is attached under Exhibit "B," and their amended "collective" response is attached as Exhibit "C." A sample of the requests for production served on the second class of Opt-In Plaintiffs is attached under Exhibit "D," and their "collective" response is attached as Exhibit "E." A sample of the interrogatories Cellular Sales served on the Opt-In Plaintiffs is attached as Exhibit "F."

services or with whom your Sales Company has contracted." (Interrogatories Nos. 9-11). With respect to Plaintiffs' allegations that Cellular Sales exercised substantial control over Plaintiffs, among other things, Cellular Sales asked for all documents "that were provided to you or your Sales Company by Cellular Sales during the relevant time period." (RFP No. 50).

In addition, Cellular Sales sought documents and information regarding the manner in which Sales Companies performed the services, including documents relating to Plaintiffs' advertising efforts, Plaintiffs' hiring of other workers, and the tools and equipment Plaintiffs used. For example, RFP No. 13 to the Opt-In Plaintiffs requested the following documents:

> All documents and communications showing or relating to advertisements and advertising by you or your Sales Company of their services, including, but not limited to, print and online ads, posters or fliers, emails to customers and prospects, and postings on social media sites or forums, including Facebook, Twitter, or other websites, and communications and contracts with advertising agencies, during the relevant time period.

Moreover, RFP No. 42 requested documents related to other workers hired by Plaintiffs' Sales Companies, including all contracts with such workers and documents showing the compensation paid to the workers. RFP No. 43 further asked for the following documents:

> All documents, including communications, invoices, and contracts, relating to every individual or entity you or your Sales Company contracted or partnered with during the relevant time period to perform services related to the services you performed for Cellular Sales, including advertising and administrative services.

Similarly, Interrogatory No. 16 requested each plaintiff to "[i]dentify every individual and entity you or your Sales Company hired, partnered with, or contracted with to perform any services relating to the services you or your Sales Company performed for Cellular Sales . . . , including advertising, bookkeeping, and administrative services."

As shown above, Cellular Sales' first set of discovery requests were specifically targeted to obtain relevant information regarding the manner in which Plaintiffs operated their Sales Companies and performed the services at issue.

**B. Plaintiffs are improperly withholding important documents and information.**

The depositions have revealed that several Plaintiffs failed to provide relevant documents and information in response to Cellular Sales' first set of requests for production and interrogatories, including information and documents relating to (1) Plaintiffs' efforts to advertise their Sales Companies' services; (2) communications related to their work for Cellular Sales; (3) other companies for which their Sales Companies performed services; and (4) other workers hired by Plaintiffs to assist with the services Plaintiffs performed for Cellular Sales.

As noted above, Cellular Sales asked each Plaintiff to produce documents relating to their efforts to advertise their Sales Companies' services. (RFP No. 13). In their responses, all the Plaintiffs ***affirmatively represented*** that they "do not presently have in their possession, custody or control responsive documents." (*See* Exhibit C, at p. 40; Exhibit E, at p. 42). However, at their depositions, several Plaintiffs conceded they did not even search for these documents.

At her deposition, Jaquennette Harris testified that, although she engaged in substantial advertising of her Sales Company's services, **she has not done anything to look for those documents.** (Exhibit G, depo of Jaquennette Harris, at 75:20-79:2). Harris even testified that she had no idea she was under any obligation to search for documents relating to her Sales Company's advertisements, including a Facebook ad she had purchased. (*Id.*). Likewise, while Daniel Becker, another opt-in plaintiff, testified he engaged in substantial advertising efforts, including posting signs, sending out mass mailings and fliers, and paying others to design advertisements, Plaintiffs have not produced any documents relating to Becker's advertising efforts. (Exhibit H, depo of Daniel Becker, at 23:20-27:15, 29:25-30:22). Opt-in Plaintiff James Harrington also gave numerous examples of advertising he did on behalf of his Sales Company. (Exhibit I, depo of James Harrington, at 54:7-56:2). Harrington testified he has documents relating to the advertisements, **but admitted he has made no effort to find them**. (*Id.*). Harrington also testified that he probably has records relating to his Sales Company's services for Cellular Sales, including customer agreements and communications relating to sales, **but he has made no effort to search for those records either.** (*Id.* at 105:20-107:2, 111:20-112:17). Instead, Harrington testified he was only told to gather his tax records. (*Id.* at 113:11-114:2).

***Several other plaintiffs*** have like testified they made ***no effort whatsoever*** to gather responsive documents and they did not know they were under any obligation to do so. (Exhibit J, depo of Kevan McDonald, at 15:3-16:13, 74:24-77:7; Exhibit K, depo of Andrew Bittel, at 62:8-63:2; Exhibit L, depo of Corbelli, at 40:23-41:11, 42:13-21). **In fact, Plaintiffs have not produced *any documents at all* for the majority of the Opt-In Plaintiffs.**

The fact so many Plaintiffs have made no effort to search for responsive documents is especially alarming because this also means Plaintiffs have made no effort to preserve such documents. Indeed, some Plaintiffs such as Charlene Noel testified that they may have thrown away relevant documents relating to their Sales Company's work for Cellular Sales after this suit was filed. (Exhibit M, depo of Charlene Noel, at 69:4-19).

**Even further, Plaintiffs never disclosed that they were withholding these responsive documents from Cellular Sales.** In the requests for production, Cellular Sales ***specifically instructed*** Plaintiffs to disclose and identify any documents they were withholding on the basis of objections. (*See* page 3 to RFPs, under title "Responsive Items Not Produced."). **However, Plaintiffs never informed Cellular Sales they were withholding any documents. To the direct contrary**, each Plaintiff affirmatively represented either that "Plaintiff ***does not*** presently have in his possession, custody or control responsive documents" or that the responsive documents were being produced. (*See* Exhibits C & E). At no point, did Plaintiffs disclose they were making no effort to search for or preserve responsive documents.

The depositions have also revealed that Plaintiffs failed to fully and truthfully answer Cellular Sales' interrogatories. Although the interrogatories asked Plaintiffs to identify all other companies and individuals for whom their Sales Companies performed services as independent contractors (*see* Interrogatory Nos. 9-11), Charlene Noel failed to disclose that her Sales Company performed services for a company called "Western Living." (*Compare* Exhibit N, Supplemental Response to Defendants' First Set of Interrogatories to Noel, at pp. 18-23, Responses to Interrogatories Nos. 9-11 *with* Exhibit M, depo of Noel, at 8:12-23, 42:20-25, 69:20-70:9, 70:21-71:20, 72:13-73:12, 73:16-74:9, 106:18-108:9). Likewise, James Harrington's deposition revealed that although Harrington's Sales Company performed services for other entities, including a church, Harrington failed to disclose this work in his interrogatory responses. (*Compare* Exhibit O, Response to First Set of Interrogatories to Harrington, Interrogatory No. 11, at p. 23, *with* Exhibit I, depo of James Harrington, at 15:12-17:22, 19:2-12, 121:14-22). Julie Miller's deposition also revealed that Miller failed to disclose her Sales Company's subsequent work in the farming industry. (*Compare* Exhibit P, Supplemental Response to Defendants' First Set of Interrogatories to Julie Miller, at pp. 18-23, Responses to Interrogatories Nos. 9-11, *with* Exhibit Q, depo of Miller, at 24:19-25:10, 26:15-24).

In addition, Interrogatory No. 16 asked each Plaintiff to identify every individual and entity they or their Sales Company hired or contracted with in connection with services for Cellular Sales. Daniel Becker answered "none" to this interrogatory. (Exhibit R, Response to Defendants' First Set of Interrogatories to Becker, Interrogatory No. 16, at p. 28). It was not until his deposition that Becker ***finally disclosed*** that ***he did hire*** someone to design advertisements for his Sales Company. (Exhibit H, depo of Daniel Becker, at 26:7-25).

Furthermore, documents relating to the work Plaintiffs' Sales Companies performed for other businesses and the other persons hired by Plaintiffs' Sales Companies should have been produced in response to Requests for Production No. 12, No. 40, and No. 41. (*See* Exhibits C & E). However, Plaintiffs failed to produce documents responsive to these requests.

As shown above, Plaintiffs have failed to fully and accurately answer interrogatories. Plaintiffs have also failed to search for and produce responsive documents. And these are just the issues of which Cellular Sales is aware by virtue of the depositions. Accordingly, Cellular Sales requests the Court direct Plaintiffs to amend their interrogatory answers to provide *complete* and *accurate* information and produce the documents responsive to Cellular Sales' First Set of Requests for Production.

## II. Holick is Improperly Withholding Communications Responsive to Request No. 12 and Request No. 13 of Defendants' Third Requests for Production

Holick refuses to produce communications that are responsive to Request No. 12 and Request No. 13 of Defendants' Third Requests for Production, which Cellular Sales served on June 23, 2017. These requests asked Holick to produce communications which discuss his Sales Company and the services at issue. RFP No. 12 requested as follows:

> Produce complete copies of all communications, including all messages, tweets, and postings, that were sent, made, or received by or through social media accounts relating to your Sales Company.

(Exhibit S, Response to Defendants' Third Requests for Production to Plaintiff Jan P. Holick Jr., at p. 13). Similarly, RFP No. 13 requested the following:

> Produce copies of all communications on social media, including, but not limited to, all messages, postings, tweets, comments, and Facebook or Myspace posts, which refer to or mention either your Sales Company or any services you or your Sales Company performed for or on behalf of Defendants.

(*Id.* at pp. 14-15).

On August 30, 2017, Holick served a "Withholding Log" disclosing that Holick is withholding several communications that are responsive to RFP No. 12 and No. 13. (Exhibit T). The entries in the Withholding Log that Cellular Sales is contesting are highlighted in Exhibit U.

Specifically, Holick is withholding his communications with several potential opt-in plaintiffs who chose not to join this lawsuit.[3] Holick does not claim these communications are privileged. In fact, several of the communications occurred prior to any collective action being certified. In addition, Holick is withholding certain Facebook communications with William Burrell and Jason Mack regarding depositions in this case. As his ***sole*** basis for withholding these communications, Holick relies on the following boilerplate objections: "vagueness, lack of particularity, and overbreadth." (Exhibit S, at pp. 3-4).

The Court should overrule Holick's objections. Holick's "vagueness" and "lack of particularity" objections clearly lack merit because Holick was able to identify these documents as responsive to the discovery requests. Indeed, the requests specifically ask for communications that discuss Holick's Sales Company or the services at issue. Furthermore, the requests are not overbroad. Cellular Sales is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). All of the potential opt-in plaintiffs whose communications Holick is withholding also had Sales Companies during the relevant time period. It is not surprising that Holick is trying to keep these communications secret—these individuals chose ***not to join*** Holick's lawsuit. There is no legitimate basis for Plaintiffs to hide Holick's discussions with these sales representatives. As discussed at length above, the manner in which Sales Companies operated and were treated by Cellular Sales is tantamount to the resolution of this case.

For the same reasons, Holick is not entitled to withhold his communications with other named plaintiffs. The mere fact the Facebook messages are among plaintiffs does not make those communications privileged. No attorney-client privilege attaches because Plaintiffs do not claim

---

[3] Those potential opt-in plaintiffs are Joseph Aviles, Nick Bordeau, Shane Barringer, Dane Siefert, David Raysor, Rick Amico, and Rita Wong.

their counsel was a party to the communications. Moreover, while Plaintiffs purport to rely on the "common interest" doctrine, it is well-settled that a communication is not privileged merely because it occurs among named plaintiffs. Instead, there must be ***an applicable underlying privilege*** to invoke the common interest doctrine. *See, e.g.*, *S.E.C. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 3055396, at *3 (S.D.N.Y. July 19, 2011) (unpublished) ("Before a communication can be protected under the common-interest doctrine, 'the communication must meet the elements of the attorney-client privilege.'"); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (common interest doctrine "is not an independent source of privilege or confidentiality"). Because Plaintiffs fail to identify any underlying privilege, Plaintiffs cannot rely on the "common interest" doctrine.

Therefore, Cellular Sales requests that Plaintiffs be ordered to produce the following communications identified in Plaintiffs' Withholding Log, which are highlighted in Exhibit U:

- 10/4/2013 – Linked-In Messages Between Jan Holick and Joseph Aviles
- 10/4/2013 – Linked-In Messages Between Jan Holick and Nick Bordeau
- 10/4/2013 – Linked-In Messages Between Jan Holick and Shane Barringer
- 10/4/2013 – Linked-In Messages Between Jan Holick and Dan Siefert
- 10/23/2013 – Linked-In Messages Between Jan Holick and David Raysor
- 05/12/2014 – Linked-In Messages Between Jan Holick and David Raysor
- 05/14/2014 – Linked-In Messages Between Jan Holick and David Raysor
- 11/29/2014 – Linked-In Messages Between Jan Holick and Rita Wong
- 11/29/2014 – Facebook Messages Between Jan Holick and David Raysor
- 10/12-10/13/2015 – Facebook Messages Between Jan Holick and Rick Amico
- 12/23/2015 – Facebook Messages Between Jan Holick and Shane Barringer
- 06/01/2017 – Facebook Messages Between Jan Holick and William Burrell
- 06/19-06/20/2017 – Facebook Messages Between Jan Holick and Jason Mack
- 06/20-06/21/2017 – Facebook Messages Between Jan Holick and William Burrell
- 06/28/2017 – Facebook Messages Between Jan Holick and William Burrell

## Conclusion

For all the foregoing reasons, Cellular Sales requests that Your Honor (1) compel Plaintiffs to respond fully and truthfully to Defendants' First Set of Interrogatories; (2) compel Plaintiffs to produce documents responsive to Defendants' First Requests for Production; and (3) compel Holick to produce the communications identified above which Holick should have produced in response to Defendant Requests for Production to Plaintiff Jan P. Holick, Jr.

Very truly yours,

C. Larry Carbo, III