# CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

**Attorneys at Law**

1200 SMITH STREET, SUITE 1400

## HOUSTON, TEXAS  77002-4496

(713) 658-1818   (800) 342-5829

(713) 658-2553 (FAX)

chwwm@chamberlainlaw.com

C. LARRY CARBO, III
SHAREHOLDER
DIRECT DIAL NO.(713) 356-1712
E-MAIL: larry.carbo@chamberlainlaw.com

HOUSTON
ATLANTA
PHILADELPHIA
SAN ANTONIO

August 16, 2017

*Via Email*

Ronald G. Dunn

Daniel A. Jacobs

Gleason, Dunn, Walsh & O'Shea

40 Beaver Street

Albany, New York 12207

Re:   Case No. 1:12-cv-584 and No. 1:13-cv-738; *Holick, et al. v. Cellular Sales*; In the United States District Court, Northern District of New York

Dear Ron and Dan,

This letter serves as an attempt to confer regarding certain outstanding discovery issues. Let us know Plaintiffs' position on each of these matters by noon on Monday, August 21, 2017, so we can promptly submit any remaining issues to the Court.

## 1.   Plaintiffs' Reliance on the "Common Interest" Doctrine is Improper and Misplaced

To the extent Plaintiffs rely on the "common interest" doctrine as a basis for withholding documents and testimony at depositions, Cellular Sales demands that Plaintiffs withdraw this objection and immediately produce the responsive documents and information.

At his deposition, Jason Mack testified he has had written communications, including emails, text messages, and Instagram conversations, with other Plaintiffs regarding his damages, documents, and services performed for Cellular Sales.  However, Mack did not produce those documents despite Cellular Sales' discovery requests. Mack also refused to answer questions regarding those documents at his deposition. Instead, Plaintiffs' counsel objected based on "Common Interest" and instructed Mack not to answer Cellular Sales' counsel's questions.

Plaintiffs' reliance on the "common interest" is misplaced. As an initial matter, Plaintiffs waived this objection with respect to the requested documents and communications. The communications Mack referenced at his deposition should have been produced ***years ago*** in in response to Cellular Sales' prior discovery requests. In Request for Production No. 6 of Defendants' First Requests for Production to Mack, Cellular Sales specifically requested Plaintiffs to produce "All documents and communications reflecting the alleged wages you claim Defendants unlawfully deducted or withheld from you."  Similarly, Request for Production No. 7 requested "All documents relating to or reflecting your alleged damages in this lawsuit" and

**EXHIBIT A**

August 16, 2017
Page 2

Request for Production No. 8 requested "All written or recorded statements from any person, in any form, which pertain to your allegations for liability or damages in this lawsuit." Furthermore, Request for Production No. 41 requested Mack to produce "All communications related to your work for Defendants during the relevant time period."

In his discovery responses, Mack did not assert any privilege based on the common interest doctrine. Instead, Mack referenced and purported to produce numerous responsive documents. However, based on our review, Mack did not produce any of the communications he referenced at his deposition or any other communications with other Plaintiffs.  Accordingly, Mack has waived the common-interest doctrine with respect to the requested communications.

The other Plaintiffs also waived any objections based on the "common interest" doctrine by not asserting this doctrine in their prior discovery responses and privilege logs. In fact, *none of the Plaintiffs* disclosed that they were withholding any documents based on the "common interest" doctrine. Thus, Plaintiffs have waived that privilege. *See, e.g.*, *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 99 (W.D.N.Y.2011) (collecting numerous cases and holding party's failure to timely serve privilege log waived any privilege).

Plaintiffs' reliance on the common interest doctrine is also misplaced because the doctrine does not provide blanket protection of communications among plaintiffs. Instead, there must be an applicable underlying privilege in order to invoke the common interest doctrine. *See, e.g.*, *S.E.C. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 3055396, at *3 (S.D.N.Y. July 19, 2011) (unpublished) ("Before a communication can be protected under the common-interest doctrine, 'the communication must meet the elements of the attorney-client privilege.'"). Because Plaintiffs fail to identify any underlying privilege, for this additional reason, Plaintiffs are not entitled to withhold documents and testimony based on the "common interest" doctrine.

Accordingly, to the extent any Plaintiffs are withholding communications and information based on the common interest doctrine, Cellular Sales demands that Plaintiffs produce those documents immediately. In addition, to the extent Plaintiffs refuse to provide deposition testimony under the auspices of the "common interest" doctrine, or in the event the communications are later found to contain substantive information, Cellular Sales will also have no choice but to re-open those depositions.

For similar reasons, Holick's assertion of the "common interest" doctrine in his responses to Requests for Production Nos. 12 and 13 of Defendants' Third Requests for Production to Plaintiff Jan P. Holick and in the privilege log Holick served on August 2, 2017 is also improper. Like Cellular Sales' prior requests, Cellular Sales' Requests for Production Nos. 12 and 13 requested communications related to Holick's Sales Company.  Because Holick should have produced those documents years ago in response to prior discovery requests, Holick cannot now rely on privilege objections in withholding those documents.

But, even further, the privilege log Holick served on August 2, 2017 misapplies the common interest doctrine.  In this privilege log, Holick simply asserts "Common-Interest Privilege" in response to *any* communications among Plaintiffs. However, Holick's privilege log fails to establish an applicable underlying privilege. For example, for several entries, Holick

August 16, 2017
Page 3

vaguely states "Communications with counsel" even though no counsel was a party to the communication. Other entries simply state "Contact information" or "Printing Documents/Depositions/Sealing of Documents." Holick's purported descriptions and explanations in his privilege log not only misstate the common interest doctrine, but also fall significantly short of Rule 26(b)(5)'s requirements for asserting and substantiating a privilege claim. *See, e.g.*, *Carver v. Nassau County Interim Fin. Auth.*, No. CV 11-1614 LDW GRB, 2012 WL 12266891, at *6 (E.D.N.Y. Aug. 9, 2012) (explaining "scant, uninformative description of the documents is insufficient").

Accordingly, Cellular Sales demands that Holick withdraw his objections based on the "Common-Interest Privilege" and produce all documents withheld in response to Defendants' Third Requests for Production to Plaintiff Jan P. Holick.

**2.**   **Holick's Other Objections to Requests for Production Nos. 12 and 13 Do Not Provide a Valid Basis for Withholding Communications Relating to His Sales Company**

Holick also indicated he is withholding documents responsive to Defendants' Third Requests for Production to Plaintiff Jan P. Holick based on objections that the requests are "vague," lack "reasonable particularity," and are disproportionate because Holick believes that his Sales Company's communications relating to matters other than his work for Cellular Sales are "irrelevant." These objections lack merit.

The requests could not be clearer. Request for Production No. 12 requests Holick to produce "all communications, including all messages, tweets, and postings, that were sent, made, or received by or through social media accounts relating to your Sales Company." Similarly, Request for Production No. 13 requests Holick to produce "all communications on social media, including, but not limited to, all messages, postings, tweets, comments, and Facebook or Myspace posts, which refer to or mention either your Sales Company or any services you or your Sales Company performed for or on behalf of Defendants."

Plaintiffs cannot unilaterally limit discovery to the services performed for Cellular Sales. Plaintiffs' use of their Sales Companies to perform other services and work is directly relevant to the independent contractor issue, including whether plaintiffs were free to engage in other work or were economically dependent on the alleged employer. Therefore, Cellular Sales will file a motion to compel unless Holick agrees to withdraw his objections to Requests for Production Nos. 12 and 13 and promptly produces the requested documents.

**3.**   **Holick's Interrogatory Answers Fail to Disclose Whether Plaintiffs Are Withholding Responsive Information**

On August 4, 2017, Holick also served responses to Defendants' Second Set of Interrogatories to Plaintiff Jan P. Holick, Jr. In his responses, Holick purports to assert objections to Interrogatories Nos. 2-4. Although Holick proceeds to answer each interrogatory, Holick prefaces the answer with the clause "Subject to and without waiving this objection[.]" Thus, it is currently unclear whether Holick is withholding any information based on the objections. Accordingly, for each interrogatory, let us know if Holick is withholding requested information.

August 16, 2017
Page 4

### 4. <u>Depositions Have Revealed That Plaintiffs Failed to Provide Documents and Information Responsive to Cellular Sales' Prior Discovery Requests</u>

The depositions taken thus far have revealed that several Plaintiffs failed to provide relevant documents and information in response to Cellular Sales' prior discovery requests. In the prior discovery requests, Cellular Sales specifically asked each Plaintiff to produce documents relating to their efforts to advertise their Sales Companies' services. (*See* RFP No. 13 to each opt-in plaintiff). In their responses, Plaintiffs, including Jaquennette Harris, represented that they "do not presently have in their possession, custody or control responsive documents." However, at her deposition, Jaquennette Harris testified that, although she engaged in substantial advertising of her Sales Company's services, including the purchase of a Facebook advertisement, **she has not done anything to look for those documents.** Likewise, while Daniel Becker testified he engaged in substantial advertising efforts, including posting signs, sending out mass mailings and fliers to potential customers, and paying others to design advertisements, Plaintiffs have not produced any documents relating to Becker's advertising efforts. James Harrington also gave numerous examples of advertising he did on behalf of his Sales Company. While Harrington testified he still has documents relating to the advertisements, he admitted he has made no effort to find them. **In fact, Plaintiffs have not produced any documents at all for the majority of the named and opt-in Plaintiffs in this lawsuit.**

In Cellular Sales' prior discovery requests to the opt-in plaintiffs, including Request for Production No. 35, Cellular Sales also requested Plaintiffs to provide communications related to their work for Cellular Sales. During their depositions, several Plaintiffs testified that they have such communications, but admitted that they have not made *any* effort to gather those communications. For example, Jaquennette Harris testified that although she posted comments and messages related to her Sales Company on Facebook, she has done nothing to produce those communications. In fact, Harris testified that she did not even know she was under an obligation to search for such documents. Andrew Bittel and Chantel Winkler also testified that although there were Facebook posts and messages relating to their Sales Companies' work for Cellular Sales, *including posts about meetings, work shifts, and sales,* Winkler and Bittel both admitted they have not produced those communications. Mr. Bittel also admitted he has not even looked for those communications. Likewise, Martina Corbelli testified she has not looked to see if she has documents relating to her Sales Company's work for Cellular Sales. But, even further, Kevan McDonald specifically testified that he has email communications with Cellular Sales' officers which have not been produced. Like the other Plaintiffs, McDonald explained that no one ever told him to look for or gather these documents.

The fact so many Plaintiffs did not even know they were under any obligation to search for responsive documents is especially alarming because this also means Plaintiffs have made no efforts to preserve such documents. Indeed, some Plaintiffs such as Charlene Noel have testified that they have thrown away documents relating to their Sales Company's work for Cellular Sales. Please be advised that Cellular Sales will move for sanctions if Plaintiffs fail to take reasonable and necessary efforts to preserve and produce requested documents.

August 16, 2017
Page 5

     The depositions taken thus far have also revealed that Plaintiffs failed to fully answer Cellular Sales' interrogatories. Although Cellular Sales' interrogatories asked Plaintiffs to identify all other companies for which their Sales Companies performed services as independent contractors (*see* Interrogatory Nos. 9-11 to the opt-in plaintiffs), Charlene Noel failed to disclose in her responses that her Sales Company performed services for a company called "Western Living." Likewise, Julie Miller's deposition revealed that Miller failed to disclose in interrogatory responses her Sales Company's subsequent work in the farming industry. The interrogatories also asked each Plaintiff to identify every individual and entity they or their Sales Company hired or contracted with in connection with services for Cellular Sales. In his response, Daniel Becker answered "none." However, at his deposition, Becker testified that he hired someone to design advertisements for his Sales Company. James Harrington's deposition also revealed that although Harrington's Sales Company performed services for other entities, including a church, Harrington failed to disclose this work in his interrogatory responses.

     Moreover, documents relating to work Plaintiffs' Sales Companies performed for other businesses should have been produced in response to Cellular Sales' prior Requests for Production to the opt-in plaintiffs, including Request for Production No. 12, which specifically requested "[a]ll documents showing services performed by your Sales Company for any business entity or individuals other than Cellular Sales, including, but not limited to, all contracts your Sales Company entered into, all Forms 1099 relating to your Sales Company, all invoices issued by your Sales Company, and all documents showing any payments your Sales Company received from any other business entity or individuals," and Requests for Production No. 40 and No. 41, which requested "[a]ll documents showing work or jobs that either you or your Sales Company held or performed as an independent contractor on behalf of any individual or entity other than Cellular Sales," and "[a]ll contracts between your Sales Company and any individual or entity other than Cellular Sales."

     Absent immediate compliance by Plaintiffs, Cellular Sales intends to bring these issues to the Court's attention. The depositions have revealed that Plaintiffs failed to make good faith (or even basic) efforts to comply with discovery or preserve relevant documents. Therefore, Cellular Sales demands that Plaintiffs immediately produce the documents and information that are responsive to Cellular Sales' prior interrogatories and requests for production, including, but to limited to, the information and documents described above.

     Please let us know by noon on Monday, August 21, 2017, whether Plaintiffs will amend their discovery responses to correct these deficiencies and produce the requested documents and information.

Very truly yours,

C. Larry Carbo, III

2477685.3
005322.000139