**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JAN P. HOLICK, JR., STEVEN MOFFITT,**
**JUSTIN MOFFITT, GURWINDER SINGH,**
**JASON MACK, WILLIAM BURRELL, and**
**TIMOTHY M. PRATT,**

|  |  |
|---|---|
| **Plaintiffs on behalf** | **Case No. 1:12-CV-584** |
| **of themselves and** | **(NAM/DJS)** |
| **all others similarly** | |
| **situated,** | |

v.

**CELLULAR SALES OF NEW YORK, LLC, and**
**CELLULAR SALES OF KNOXVILLE, INC.,**

        **Defendants.**

---

**APPEARANCES:**

GLEASON, DUNN LAW FIRM
Ronald G. Dunn, Esq.
Daniel A. Jacobs, Esq.
Christopher M. Silva, Esq.
40 Beaver Street
Albany, New York 12207
*Attorneys for Plaintiffs*

CHAMBERLAIN, HRDLICKA LAW FIRM
Ryan O. Cantrell, Esq.
Charles L. Carbo, III, Esq.
Julie R. Offerman, Esq.
1200 Smith Street, Suite 1400
Houston, Texas 77002
*Attorneys for Defendants*

HINMAN, STRAUB LAW FIRM
Joseph M. Dougherty. Esq.
Benjamin M. Wilkinson, Esq.
David T. Luntz, Esq.
121 State Street
Albany, New York 12207

*Attorneys for Defendants*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

The named Plaintiffs, on behalf of themselves and all others similarly situated, bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York State Labor Law ("NYLL"), Article 6, § 190 *et seq.*, Article 19, § 650 *et seq.*, against Cellular Sales of New York, LLC ("CSNY") and Cellular Sales of Knoxville, Inc. ("CSK") (collectively, "Defendants") asserting claims for alleged violations of minimum wage and overtime requirements.  (Dkt. No. 177).  Plaintiffs further allege NYLL violations related to Defendants': (1) failure to pay for compensable work; (2) unlawful wage deductions; and (3) failure to timely pay wages.  (*Id.*).  Now before the Court are Defendants' motion to decertify Plaintiffs' conditional collective action, (Dkt. No. 377), and Plaintiffs' motion for class certification under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), (Dkt. No. 345).

After careful review of the record and consideration of the parties' arguments, the Court concludes that Plaintiffs have failed to demonstrate that they are similarly situated to the degree necessary to maintain an FLSA collective action, or to certify a Rule 23 class action.  The Court finds that Plaintiffs' disparate and highly individualized experiences with the Defendants are not conducive to the production of representative evidence required to proceed collectively. Plaintiffs' inability to present common proof demonstrating the nature of their employment relationship with Defendants frustrates the possibility of collective resolution and militates against considerations of fairness and procedure.  Accordingly, for the reasons that follow,

Plaintiffs' motion for class certification is denied, and Defendants' motion to decertify the conditional FLSA collective action is granted.

## II.    FACTUAL BACKGROUND

CSNY is an authorized Verizon Wireless dealer that markets and sells Verizon Wireless products and services in New York State. (Dkt. No. 404, ¶¶ 1–2). Prior to 2012, CSNY operated more than twenty (20) retail stores in upstate New York. (Dkt. No. 405-1, ¶ 4). At all relevant times, CSK was a Tennessee corporation headquartered in Knoxville, Tennessee, and it was the sole member and parent company of CSNY. (Dkt. No. 406-1, ¶¶ 2–3).

In connection with its business, CSNY operates retail stores that sell cellular telephones, wireless service plans, data service plans, and related equipment. (Dkt. No. 406-1, ¶ 3). Verizon Wireless pays CSNY certain rates for services and equipment sold on behalf of Verizon Wireless. (Dkt. No. 388-14, ¶ 5). In 2010 and 2011, CSNY contracted with more than three hundred (300) limited liability companies and corporations (hereinafter, "Sales Companies") owned by many of the named and opt-in Plaintiffs to sell Verizon Wireless service plans, devices, and accessories. (Dkt. Nos. 388-14, ¶ 5; 405-1, ¶ 7). Plaintiffs, with the exception of two opt-in Plaintiffs, each executed a Non-Exclusive Independent Sales Agreement ("Sales Agreement") with CSNY on behalf of their Sales Companies. (Dkt. No. 388-14, ¶ 6). Pursuant to these Sales Agreements, Plaintiffs sold products and services through their Sales Companies in the New York market. (*Id.*, ¶ 8). Each Sales Agreement contained a provision stating:

> The relationship of the Sales Company to [CSNY] is that of an independent contractor. Each person who is engaged by the Sales Company to render services with respect to those activities for which Sales Company receives Sales Commissions shall be an employee of the Sales Company and not of [CSNY]. Sales Company understands and expressly agrees that nothing contained in this Agreement or arising out of or relating to the relationship between it and [CSNY] is intended or should be construed to create

3

> any relationship of franchisee and franchisor between the Parties or create any partnership, joint venture or agency relationship between the Parties. Neither Sales Company nor [CSNY] shall make any express or implied agreements, guarantees or representations or incur any indebtedness or obligations, in the name of on behalf of the other.

(*See, e.g.*, Dkt. No. 388-7, p. 4). Plaintiffs were not personally obligated to perform any services for CSNY. (Dkt. No. 404, ¶ 14). The Sales Agreements stated that the parties "shall have the right to terminate this Agreement at will at any time, with or without cause . . . ." (Dkt. No. 404, ¶ 21).

According to the Sales Agreements, the parties agreed that CSNY would pay each Sales Company commissions based on the sales made by the Sales Company. (Dkt. No. 388-7, p. 3). CSNY calculated Sales Companies' commissions based on certain factors and contingencies, and paid commission payments to the Sales Companies according to the Commission Schedules in the Sales Agreements. (*See, e.g.*, Dkt. No. 377-4, pp. 21, 27). CSNY never paid Plaintiffs or their Sales Companies an hourly wage or a salary for time allegedly spent opening and closing stores or for time allegedly spent in trainings, conferences, and meetings. (Dkt. No. 404, ¶ 37–38).

CSNY did not withhold any taxes from the compensation that it paid to the Sales Companies. (Dkt. No. 404, ¶ 122). CSNY did not issue Form W-2s to Plaintiffs or Plaintiffs' Sales Companies. (*Id.*, ¶ 125). Instead, CSNY issued IRS Form 1099s to the Sales Companies, which reflected the commissions paid to the Sales Companies. (*Id.*, ¶ 123). CSNY made no contributions to workers' compensation insurance, unemployment insurance, or Social Security for Plaintiffs or their Sales Companies during the relevant time periods prior to 2012. (*Id.*, ¶ 126). CSNY did not provide Plaintiffs or their Sales Companies with any fringe benefits, insurance benefits, vacation time or vacation pay, or the opportunity to participate in any

4

retirement plans sponsored by CSNY. (*Id.*, ¶ 127). None of the Plaintiffs treated or classified themselves as a CSNY "employee" for tax purposes during their Sales Company's contract with CSNY. (*Id.*, ¶ 184).

Each Sales Company's relationship with CSNY was terminated on or before January 1, 2012. (Dkt. No. 404, ¶ 22). From then on, CSNY no longer contracted with Sales Companies for sales support. (Dkt. No. 406-1, ¶ 378). Instead, CSNY extended offers of employment to some Sales Representatives to become CSNY employees rather than independent contractors. (*Id.*, ¶ 376).

## III. PROCEDURAL HISTORY

Plaintiffs' claims stem from their alleged employment relationship with Defendants prior to January 2012. (Dkt. No. 177). Essentially, Plaintiffs claim that Defendants misclassified them as "independent contractors" instead of "employees" as defined by the FLSA and NYLL, thus depriving them of employee benefits required by law. (*Id.*). On February 14, 2014, the parties filed a stipulation for conditional certification pursuant to Section 216(b) of the FLSA, and the collective was later expanded by stipulation and order dated October 21, 2015, to include members of the following group:

> All individuals who, during any workweek between June 24, 2010
> [ ] up to and through December 31, 2011, who (a) performed sales
> services for Cellular Sales of New York, LLC or Cellular Sales of
> Knoxville, Inc. in New York; (b) were classified as non-employee
> contractors; and (c) were paid, in whole or in part, on a commission
> basis.

(Dkt. No. 95, ¶ 1). The parties also stipulated to the dissemination of a notice of the FLSA claim to putative collective action members. (*Id.*, pp. 6–12). A total of forty-seven (47) opt-in plaintiffs initially joined the conditional FLSA collective action. (Dkt. No. 377-2, ¶ 7). Opt-in Plaintiff Britney Ross subsequently dismissed her claims against Defendants, and the Court dismissed the

claims of opt-in plaintiffs Richard Hollar, John Jones, and Frederick Maser. (*See* Dkt. Nos. 166, 246). Thus, there are currently seven (7) named plaintiffs and forty-three (43) opt-in plaintiffs involved in this lawsuit. (Dkt. No. 377-2, ¶ 7). Plaintiffs' claims are limited to the period prior to January 1, 2012 when their Sales Companies contracted with CSNY. (*Id*., ¶¶ 1–4).

Defendants deny Plaintiffs' allegations and contend that no employment relationship existed prior to January 2012. (Dkt. Nos. 180, 182). On October 1, 2018, Defendants filed a motion to decertify the conditional certification of the FLSA collective action. (Dkt. No. 377). Plaintiffs oppose Defendants' motion to decertify, (Dkt. No. 404), and they have also moved for class certification under Rule 23, with a proposed class almost identical to the FLSA collective. (Dkt. No. 345). Defendants oppose Plaintiffs' motion for class certification. (Dkt. No. 405). The Court will address Defendants' motion to decertify the collective action and Plaintiffs' motion for class certification in turn.

## IV.     FLSA § 216(b) CERTIFICATION

Defendants argue that the conditionally certified FLSA collective action should be decertified because "Plaintiffs cannot satisfy their heightened burden to prove the opt-in plaintiffs are similarly situated." (Dkt. No. 377-1, p. 6). According to Defendants, "discovery has confirmed no two Sales Companies operated the same. In fact, the manner in which a Plaintiff and his or her Sales Company were treated by [CSNY] differs drastically depending on which Plaintiff you ask." (*Id*.). Specifically, Defendants claim that "resolving the independent contractor issue on a collective basis would require dozens of mini-trials just to determine whether a particular plaintiff was properly classified. (*Id*., p. 7). Defendants further contend that, "[g]iven the broad variations among Plaintiffs, it would be impossible and patently unfair to Cellular Sales to extrapolate the experiences of a few to all forty-three opt-in plaintiffs, many of

whom Cellular Sales has yet to have the opportunity to depose on this threshold issue." (*Id.*). In response, Plaintiffs argue that the alleged disparities cited by Defendants "are either overstated in their significance or offer no material differences which would destroy the Plaintiffs' 'similarly situated' status." (Dkt. No. 404-1, p. 5). Plaintiffs claim that the issue of misclassification is capable of classwide resolution because "the common, factual and employment settings and the common defenses asserted by Defendants will be resolved with common proof." (*Id.*, p. 6).

### A. Legal Standard

The FLSA expressly permits collective actions against employers accused of violating its provisions. *See* 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). Courts use a two-step process to assess whether to certify a proposed collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). The first step requires the court to decide whether to allow the named plaintiffs to send a notice to potential opt-in plaintiffs who may be "similarly situated" with respect to the alleged FLSA violations. *Id.* The initial step only requires "a modest factual showing that [the plaintiffs] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Valerio v. RN Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (quoting *Myers*, 624 F.3d at 555). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 554 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). The action may be decertified if the record reveals that they are not. *Id.* The burden is on the named plaintiffs to prove that the opt-

in plaintiffs are similarly situated. *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).

Although the Second Circuit has not endorsed any set criteria for consideration on a motion for decertification, courts typically analyze the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015); *see also Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 320 (E.D.N.Y. 2014). If the plaintiffs are similarly situated, the collective action proceeds to trial, but if they are not, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative[s], may proceed on [their] own claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). The Court will assess each of the relevant factors in turn.

**B. Application**

**i. Disparate Factual and Employment Settings**

In support of their motion to decertify Plaintiffs' conditional certification, Defendants claim that decertification is warranted because of "drastic differences" in: (1) the manner in which Plaintiffs classified and treated their Sales Companies for tax purposes; (2) the degree to which Plaintiffs invested in equipment, supplies, and advertising for their Sales Companies; (3) the use and hiring of other workers to perform services as part of the Sales Agreements with Defendants; (4) conflicting accounts about the ability to work outside the retail stores; and (5) Plaintiffs' varying accounts of their ability to set their own work schedules. (Dkt. No. 377-1, pp. 11–26). In response, Plaintiffs argue that the named and opt-in plaintiffs are all similarly situated with regard to "the critical inquiry of control," because "all Sales Representatives were

subject to a common scheme of control through their work duties, company policies, guidelines, and requirements imposed on their working conditions by [Defendants]." (Dkt. No. 404-1, p. 14). Plaintiffs further contend that they have demonstrated that they are similarly situated because "[e]ach of the Plaintiffs share common facts applied identically and established by common proof for each of [the relevant] factors." (*Id.*).

At this stage, Plaintiffs must demonstrate that they are similar in relevant respects of their relationship with Defendants, "i.e., with respect to the factors relevant to this Court's determination of whether they are employees or independent contractors under the FLSA." *Hernandez v. Fresh Diet, Inc.*, No. 12-CV-4339, 2014 WL 5039431, at *5, 2014 U.S. Dist. LEXIS 139069, at *10 (S.D.N.Y. Sept. 29, 2014). "Under the FLSA, the question of whether an employee-employer relationship exists is one of 'economic reality.'" *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). In order to distinguish employees from independent contractors, courts apply the five-part test established in *United States v. Silk*, 331 U.S. 704, 716 (1947), which considers: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012); *see also Brock v. Superior Care Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988). The Court's analysis should be "focused on the totality of the circumstances in addressing our ultimate concern . . . whether, as a matter of economic reality, the workers depend upon someone else's business for

9

the opportunity to render service or are in business for themselves.'" *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (citing *Superior Care*, 840 F.2d at 1059).

Here, the degree of control Defendants exercised over Plaintiffs is the central consideration in determining the legitimacy of their classification as independent contractors. However, the record shows that the determination as to Defendants' degree of control over each Plaintiff is highly personalized as to each Plaintiff, and therefore is not amenable to common proof. Specifically, the record shows significant diversity among the Plaintiffs with regard to a number of important factors concerning the nature of their relationship with Defendants.

First, as noted by Defendants, the manner in which Plaintiffs classified and treated their Sales Companies for tax purposes differed drastically across the class. (*See* Dkt. No. 377-1, pp. 12–16). Specifically, Plaintiffs varied widely with regard to: (1) how they filed their taxes with the IRS; (2) how they identified their employment status on their tax returns; and (3) the amounts and substance of the business expense deductions they reported. (Dkt. No. 377-1, p. 13). "New York courts have noted that it is a 'significant consideration' if the person classifies himself or herself as an independent contractor for income tax purposes." *Browning*, 885 F. Supp. 2d at 598 (citing *Gagen v. Kipany Prods., Ltd.*, 27 A.D.3d 1042, 1043–44 (3d Dep't 2006)). Plaintiffs argue that Defendants have overstated the differences in the manner in which Plaintiffs filed their taxes, and claim that Plaintiffs were "instructed to file their tax returns with the independent contractor designation to take advantage of the business deductions permitted by doing so." (Dkt. No. 404-1, p. 19). Nevertheless, courts frequently consider plaintiffs' claimed designations on their tax filings as "plainly relevant to the independent contractor versus employee inquiries[.]" *Landaeta v. New York and Presbyterian Hosp., Inc.*, No 12-CV-4462, 2014 WL 836991, at *5, 2014 U.S. Dist. LEXIS 27677, at *14 (S.D.N.Y. Mar. 4, 2014) (noting that a

10

plaintiffs' previous claims to independent contractor status on tax filings "may well make it difficult for plaintiffs to prevail on the issue come trial—but they do not preempt [plaintiffs' claims] altogether."); *see also Browning*, 885 F. Supp. 2d at 605 (reasoning that plaintiffs' efforts to receive "significant tax benefits associated with their independent contractor [classification]" was a factor that "weigh[ed] heavily in favor of [the court finding] independent contractor status."). Thus, the differences in how Plaintiffs filed taxes and identified themselves in tax filings are clearly relevant to the issues before the court, and weigh in favor of decertification.

Second, the record shows differences in the extent to which Plaintiffs invested in equipment, supplies, and advertising for their Sales Companies. For example, the record reflects that some Plaintiffs, like Daniel Becker, reported spending thousands of dollars on business-related equipment, (*see* Dkt. No. 377-21, pp. 7–8), while other Plaintiffs, like Julie Miller, reported that they did not purchase any supplies or equipment, (*see* Dkt. No. 377-25, p. 21). These disparities between Plaintiffs' investments in their individual Sales Companies in furtherance of their Sales Agreements with Defendants is relevant to determining their status as employees or independent contractors, and this factor also weighs in favor of decertification. *See Saleem*, 854 F.3d at 144–46 (reasoning that a plaintiff's discretionary expenditures designed to attract customers and/or support essential facets of a plaintiff's business were relevant to analyzing the nature of the employment relationship in question).

Third, the record shows relevant disparities among the Plaintiffs with regard to their hiring of other workers in support of their Sales Agreements with CSNY. As noted by Defendants, some Plaintiffs testified that they were not allowed or unaware they could hire other workers, (*see, e.g.*, Dkt. No. 377-12, pp. 68, 82, 92–93; Dkt. No. 377-19, p. 3; Dkt. No. 377-26, pp. 5–6), whereas other Plaintiffs testified that they hired workers to perform tasks in support of

the Sales Agreement, (*see, e.g.*, Dkt. No. 377-22, p. 13; Dkt. No. 377-13, pp. 9–10; Dkt. No. 377-27, pp. 5–6).  The hiring of other workers or subcontractors indicates independent contractor status.  *See Browning*, 885 F. Supp. 2d at 601 ("Ordinarily, the facts that a contractor hired his or her own employees or assistants and that the employer had no right to employ or discharge them or suggest changes in personnel of those in the contractor's employ are some indication of an independent contractor relationship."); *see also Preacely v. AAA Typing & Resume, Inc.*, No. 12-CIV-1361, 2015 WL 1266852, at *7, 2014 U.S. Dist. LEXIS 182946, at *13–14 (S.D.N.Y. Mar. 18, 2015) (citing *Anyan v. N.Y. Life Ins. Co.,* 192 F. Supp. 2d 228, 239 (S.D.N.Y. 2002)).  Accordingly, the factual discrepancies among the Plaintiffs on this important aspect weigh in favor of decertification.

Fourth, the record reflects relevant discrepancies regarding Plaintiffs' ability to work outside CSNY's retail stores.  Several of the Plaintiffs testified that they only worked at retail stores and did not know they could work elsewhere.  (*See, e.g.*, Dkt. No. 377-19, pp. 9–13, 33; Dkt. No. 377-26, pp. 7–8).  Other Plaintiffs testified that they were required to only work in retail stores.  (*See, e.g.*, Dkt. No. 377-22, pp. 9–10, 21–22; Dkt. No. 377-24, pp. 12–13, 98).  In stark contrast, other Plaintiffs testified that they had flexibility to choose where they worked, including from home offices, through visits to businesses, and marketing through booths or hosting parties.  (*See, e.g.*, Dkt. No. 377-21, pp. 13–14, 16–17; Dkt. No. 337-17, pp. 10–11, 27; Dkt. No. 377-18, pp. 23–24, 23–28, 37–39).  The location of the work performed and Plaintiffs' freedom to choose where to work is a significant factor in analyzing Plaintiffs' status as employees or independent contractors.  *See Preacely*, 2015 WL 1266852, at *7, 2014 U.S. Dist. LEXIS 182946, at *13–14 (stating that "a worker's ability to . . . work from a location other than the employer's office . . .

support[s] a finding of independent contractor status."). These factual differences cut against Plaintiffs' assertion of common proof, and therefore weigh in favor of decertification.

Finally, the record contains testimony from Plaintiffs providing varied accounts regarding their ability to determine and control their own work schedules. For example, several Plaintiffs testified that they would inform CSNY of the days they were available or unavailable to work and then CSNY would set the schedule. (*See, e.g.*, Dkt. No. 377-19, pp. 31–32; Dkt. No. 377-21, pp. 45–49; Dkt. No. 377-26, p. 16; Dkt. No. 377-20, pp. 22–23; Dkt. No. 377-17, pp. 25–26; Dkt. No. 377-14, pp. 14–15). Other Plaintiffs testified that they had no discretion with respect to when they worked at the retail stores, in which case CSNY would set the schedule and Plaintiffs were expected to follow it. (*See, e.g.*, Dkt. No. 377-18, pp. 29–30; Dkt. No. 377-16, pp. 25–26; Dkt. No. 377-24, p. 19). Further, at least two Plaintiffs testified that they could elect not to work at a retail store at all. (*See, e.g.*, Dkt. No. 377-14, p. 14; Dkt. No. 377-8, pp. 92–93). The ability to choose how much and when to work are significant factors relevant to the analyzing the parties' employment arrangement. *Saleem*, 854 F.3d at 146 ("The ability to choose how much to work also weighs in favor of independent contractor status.") (citing *Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299, 304 (5th Cir. 2017)). The widely varied testimony on this subject suggests that not all Plaintiffs were similarly situated in this key respect, and therefore this factor weighs in favor of decertification.

Defendants have also presented evidence showing notable differences among Plaintiffs with regard to: (1) the level of supervision and discipline exerted by CSNY over Plaintiffs; (2) Plaintiffs' ability to set prices and negotiate with customers; (3) the permanence and duration of the contractual relationship between Plaintiffs and CSNY; (4) their ability to work for other employers; and (5) the purposes for which Plaintiffs formed and used their Sales Companies.

(*See* Dkt. No. 377-1, pp. 21–26).  The testimony showing factual disparities among Plaintiffs on these issues is highly relevant to analyzing Plaintiffs' employment relationship with Defendants, and the diversity among Plaintiffs' experiences weighs in favor of decertification.  *See Browning*, 855 F. Supp. 2d at 610; *Saleem*, 854 F.3d at 141; *Preacely*, 2015 WL 1266852, at *8, 2014 U.S. Dist. LEXIS 182946, at *16; *Hernandez,* 2014 WL 5039431, at *5, 2014 U.S. Dist. LEXIS 139069, at *10.

Plaintiffs allege that Defendants' arguments for decertification are "an attempt to blend a merits argument with a certification issue . . . .  [And] their reliance on their cited case law is misplaced as each of the cases involves ownership or investment in materials essential to performing job duties not demonstrated on this record."  (Dkt. No. 404-1, pp. 21–22).  Yet, upon thorough review of the record, the Court finds that Defendants correctly identify material differences among Plaintiffs' experiences with CSNY.  The record belies the Plaintiffs' general assertion that Plaintiffs are all similarly situated simply because they were subject to an alleged "uniform policy" of control.  Thus, Plaintiffs' reliance on *Johnson v. Wave Comm GR LLC* fails to account for the highly individualized, plaintiff-specific analysis required to evaluate the "economic realities" of each Plaintiff's experience.  (*See* Dkt. No. 404-1, p. 17, citing *Johnson*, 4 F. Supp. 3d 453 (N.D.N.Y. 2014)).  Notably, in *Johnson*, the plaintiffs' status as employees was not disputed—a significant distinction from this case.  Here, both sides acknowledge that the central question to resolving this matter is whether the Plaintiffs were employees or independent contractors, which requires an intensive review of their relationship with Defendants using the five-part test set forth by the Supreme Court in *Silk*, and implemented by this Circuit in *Superior Care*.  *See Silk*, 331 U.S. at 716; *see also Superior Care Inc.*, 840 F.2d at 1058–59.  Given the

central relevance of the disputed employment relationship in this case, Plaintiffs' reliance on *Johnson* misses the mark.

Moreover, Plaintiffs' reliance on the supposed existence of a common scheme of uniform classification is equally unavailing. (*See, e.g.*, Dkt. No. 378, pp. 16–17). Plaintiffs' argument on this subject ignores the well-settled rule that:

> [B]lanket classification decision[s] and uniform corporate policies do not on their own render plaintiffs similarly situated. Although it can be evidence of similarity, it is well established 'that blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties.' Neither is it dispositive that plaintiffs were subject to uniform corporate policies and received uniform training.

*Stevens v. HMSHost Corp.*, No. 10-CV-3571, 2014 WL 4261410, at *5, 2014 U.S. Dist. LEXIS 119653, at *13–18 (E.D.N.Y. Aug. 27, 2014) (citing *Gardner v. W. Beef Props.*, No. 07-CV-2345, 2013 WL 1629299, at *6–7, 2013 U.S. Dist. LEXIS 56511, at *20–23 (E.D.N.Y. Mar. 25, 2013) (collecting cases)). Despite citing the *Stevens* decision for support on other points of law, Plaintiffs' papers do not discuss or distinguish this rule, which the Court finds is directly applicable here.

Surely, while some of the Plaintiffs may be similarly situated in certain relevant respects, on balance, Plaintiffs have not shown that they are sufficiently similar with regard to many of the important, control-related factors described above. Although none of these factors would be decisive on their own, when taken together, they suggest significant material differences among the Plaintiffs that would unreasonably impede Plaintiffs' ability to present common proof that is representative of all of the Plaintiffs' experiences. Moreover, Plaintiffs have not proposed any subclassification scheme to accommodate such relevant disparities among them as is permitted

under the law. *See* Fed. R. Civ. P. 23(c)(4); *Warren v. Xerox*, No. 01-CV-2909, 2004 WL 1562884, at \*17–18, 2004 U.S. Dist. LEXIS 5115, at \*58–61 (E.D.N.Y. 2004) (describing the requirements for subclass certification).

Accordingly, Plaintiffs' disparate employment settings weigh considerably in favor of decertification. *See Griffith v. Fordham Fin. Mgmt.*, No. 12-CV-1117, 2016 WL 354895, at \*2–4, 2016 U.S. Dist. LEXIS 10459, at \*5–10 (S.D.N.Y. Jan. 28, 2016) ("Determining whether Plaintiffs were employees or independent contractors is not capable of resolution by classwide proof, and will instead require highly individualized inquiries."); *see also Hernandez,* 2014 WL 5039431, at \*4–6, 2014 U.S. Dist. LEXIS 139069, at \*9–16; *Stevens*, 2014 WL 4261410, at \*5–7, 2014 U.S. Dist. LEXIS 119653, at \*13–18.

### ii. Defendants' Individualized Defenses

Defendants contend that they have individualized defenses against each Plaintiff's claims because their primary defense that Plaintiffs' were independent contractors requires a fact intensive analysis that is inherently unique to each Plaintiff. (Dkt. No. 377-1, pp. 26–29). Defendants also assert an alternative defense under 29 U.S.C. § 207(i) that "Plaintiffs were exempt from overtime under the 'retail or service establishment' exemption to the FLSA," which they argue is "also highly individual to each Plaintiff." (*Id.*, p. 26). In response, Plaintiffs claim that Defendants overstate the cited caselaw to assert an "impossible standard, where FLSA collective actions would never exist with regard to workers paid on commission[.]" (Dkt. No. 404-1, p. 31).

Crucially, in cases where the evidence suggests a wide disparity in the relevant factual circumstances, the "individualized defenses prong of the decertification analysis mirrors the disparate employment settings prong." *Hernandez*, 2014 WL 5039431, at \*6, 2014 U.S. Dist.

16

LEXIS 139069, at *17 (citing *Stevens*, 2014 WL 4261410, at *7, 2014 U.S. Dist. LEXIS 119653, at *20). Simply put, "a defendant cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other." *Id.* (citing *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008) (reasoning that "[t]he collective action device does not effect its salutary purposes when it only puts the defendant between a rock and a hard place.")).

As discussed above, the record contains considerable evidence showing wide disparities among the Plaintiffs on issues directly related to the factors necessary to determine the nature of the alleged employment relationship between Plaintiffs and CSNY. Plaintiffs' contention that Defendants' position would establish "an impossible standard" fails to recognize that Defendants' primary defense is based on the highly fact intensive analysis to determine whether Plaintiffs were employees or independent contractors in the first place. Courts in this Circuit have acknowledged that the inquiry as to whether Plaintiffs were employees or independent contractors is difficult to establish with classwide proof because it generally requires an employee-specific analysis. *See Griffith*, 2016 WL 354895, at *3–4, 2016 U.S. Dist. LEXIS 10459, at *8–10; *Shayler v. Midtown Investigations, Ltd.*, No. 12-CV-4685, 2013 WL 772818, at *9, 2013 U.S. Dist. LEXIS 29540, *27 (S.D.N.Y. Feb. 27, 2013) (denying class certification, noting that "[t]he inquiry as to whether an individual is an independent contractor or employee is fact specific and may be employee specific").

Therefore, Defendants' expected reliance upon highly individualized defenses is reasonable given the nature of Plaintiffs' claims and the proof involved, and weighs in favor of decertification. *See Hernandez*, 2014 WL 5039431, at *6, 2014 U.S. Dist. LEXIS 139069, at *16–18; *Stevens*, 2014 WL 4261410, at *7, 2014 U.S. Dist. LEXIS 119653, at *18–21.

### iii. Fairness and Procedural Considerations

Finally, Defendants contend that the disparate experiences among the Plaintiffs frustrate any of the procedural advantages of collective action, and that proceeding collectively "would either prejudice defendants' ability to present their defenses or require mini-trials for each of the opt-in plaintiffs." (Dkt. No. 377-1, pp. 29–30) (citation omitted). Plaintiffs respond with a judicial economy argument, stating that "the Court should consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party." (Dkt. No. 404-1, pp. 32–33) (citation omitted).

The Court is aware that the purpose of trying several employment-related claims under the FLSA's collective action provision is to avoid the inefficiencies of multiple individual trials on the *same* factual and legal issues. *See Zivali*, 784 F. Supp. 2d at 468. Indeed, the "FLSA collective actions serve valuable interests by allowing plaintiffs to lower individual costs and vindicate their rights by the pooling of resources, and the judiciary to efficiently resolve in one proceeding all common issues of law and fact arising from the same alleged discriminatory activity." *Hernandez,* 2014 WL 5039431, at *6, 2014 U.S. Dist. LEXIS 139069, at *18. However, "where there appears to be substantial different employment experiences among the various opt-ins the procedural advantages of a collective action cannot be realized." *Stevens*, 2014 WL 4261410, at *8, 2014 U.S. Dist. LEXIS 119653, at *21 (citation omitted). That is the case here, as Plaintiffs have failed to meet their burden to show that they are similarly situated. As discussed above, Plaintiffs' own deposition testimonies reflect glaring disparities with regard to material factors underlying the central legal issues in this case. Therefore, the Court finds that

proceeding collectively would either prejudice Defendants' ability to present their defenses, or require mini-trials for each Plaintiff. So, this factor too, weighs in favor of decertification.

In sum, all three of the factors relevant to the collective action process weigh in favor of decertification. Accordingly, Defendants' motion to decertify the FLSA Section 216(b) collective action is granted, and the claims of the opt-in Plaintiffs are dismissed without prejudice. *See Griffith*, 2016 WL 354895, at *2–4, 2016 U.S. Dist. LEXIS 10459, at *5–10; *Hernandez,* 2014 WL 5039431, at *4–6, 2014 U.S. Dist. LEXIS 139069, at *9–16; *Stevens*, 2014 WL 4261410, at *5–7, 2014 U.S. Dist. LEXIS 119653, at *13–18.

## V.    RULE 23 CLASS CERTIFICATION

On October 1, 2018, Plaintiffs filed a motion seeking Rule 23 certification of the following class: all persons who: (a) worked as a Sales Representative for Cellular Sales of Knoxville, Inc. and Cellular Sales of New York, in New York State; (b) were classified as nonemployee independent contractors; and (c) were paid, in whole, or in majority, on a commission basis. (Dkt. No. 378, p. 5). They also seek an order appointing Jan P. Holick, Steven Moffitt, Justin Moffitt, Gurwinder Singh, Jason Mack, and Timothy Pratt as representatives of the Class. (*Id.*).

In support of class certification, Plaintiffs argue that they can demonstrate "the uniform classification and relevant factors of control through [CSNY's] own uniform policies and procedures that affected all Sales Representatives." (Dkt. No. 378, p. 5). According to Plaintiffs, "[t]he consistent classification and uniform treatment of Sales Representatives gives rise to numerous common questions of fact and law shared by the entire proposed class . . . . All of the claims in Plaintiffs' operative complaint pursuant to the [NYLL] . . . are derivative of the determination that Plaintiffs were misclassified and were employees[.]" (*Id.*, pp. 5–6). Although

Defendants agree with Plaintiffs that "the central issue is whether Plaintiffs were independent contractors," they contend that "[t]his issue cannot be resolved with common proof because putative class members have provided widely disparate accounts regarding the discretion they had in performing the services and the control [CSNY] exerted over them." (Dkt. No. 405, p. 7). These arguments mirror those made by Defendants for decertification of the FLSA collective action, as discussed above. Simply put, Defendants oppose Plaintiffs' proposed class action "[b]ecause each putative class member's claims are unique and would require numerous individual inquiries." (*Id.*).

### A. Legal Standard

To meet the standard for certification of a class action under Rule 23, Plaintiffs must first establish that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are often characterized as: numerosity, commonality, typicality, and adequacy. Next, Plaintiffs "must establish: (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Catholic Healthcare W. v. United States Foodservice Inc.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)).

"To certify a class, a district court must make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, . . . must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established

by at least a preponderance of the evidence." *Id.* (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (internal quotations omitted). Courts have observed that "the second-stage similarly situated analysis under FLSA § 216(b) is considerably less stringent than the requirement [Rule 23(b)(3)] that common questions predominate." *Desilva*, 27 F. Supp. 3d at 328 (quoting *Ayers v. SGS Control Services, Inc.*, No. 03-CIV-9077, 2007 WL 646326, at *4, 2007 U.S. Dist. LEXIS 19634, at *16 (S.D.N.Y. Feb. 27, 2007)).

## B. Application[1]

### i. Rule 23(a) Requirements

The parties do not dispute the numerosity or adequacy requirements, but they disagree as to whether Plaintiff has satisfied the typicality and commonality requirements. (*See* Dkt. Nos. 378, 405). Typicality is generally shown when "each class member's claims arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," whereas commonality is established only when the "plaintiffs' grievances share a common question of law or fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing Fed. R. Civ. P. 23(a)(2), (3)).

### 1. Typicality

"[T]he test for typicality is not demanding." *Pyke v. Cuomo*, 209 F.R.D. 33, 42 (N.D.N.Y. 2002). Indeed, typicality only "requires that the claims of the representatives be typical of those of the class, and 'is satisfied when each class members' claim arises from the same course of events, and each class member makes similar legal arguments to prove the

---

[1] The Court has considered Defendants' arguments regarding the timeliness of Plaintiffs' motion for certification. (*See* Dkt. No. 405, pp. 11–13). The Court is not convinced that Defendants have suffered sufficient prejudice to deny Plaintiffs' motion for certification on that basis alone, and thus rejects Defendants' timeliness arguments for purposes of this decision only. In any event, the following analysis renders Defendants' timeliness argument moot.

defendants' liability." *Marisol*, 126 F.3d at 376. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Unlike the commonality requirement, the existence of disparate employment settings relevant to resolving each of Plaintiffs' claims is not critical to the typicality analysis. *See Hill v. County of Montgomery*, 2018 WL 3979590, *9, 2018 U.S. Dist. LEXIS 14030, *26–29 (N.D.N.Y. Aug. 20, 2018) ("When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (finding typicality where "the lead plaintiffs' and other class members' claims arise out of the same course of conduct by the defendant and are based on the same legal theories"). Here, Plaintiffs' claims sufficiently arise out of the same general policy of alleged misclassification and are all based on the same legal theories of alleged violations of the FLSA and NYLL. Defendants' narrow focus on Plaintiffs' disparate factual experiences misinterprets the modest requirement that Plaintiffs' *legal claims* must be similar. (*See* Dkt. No. 405, p. 31). Thus, Plaintiffs have met the typicality requirement. *See Singleton v. Fifth Generation, Inc.*, 2017 U.S. Dist. LEXIS 170415, at *37–40, 2017 WL 5001444, at *13 (N.D.N.Y. Sept. 27, 2017) (finding that the typicality requirement was met where the class representative shared "the same fundamental claim as the class he [sought] to represent").

### 2. Commonality

As to commonality, Plaintiffs first argue that "[t]he propriety of [CSNY's] policy [of] classifying Sales Representatives as independent contractor is a unifying thread among the

claims alleged by the members of the class." (Dkt. No. 378, p. 16). They further contend that "[w]ith regard to the critical inquiry of control, the Plaintiffs will demonstrate that all Sales Representatives were subject to a common scheme of control through their work duties, common policies, guidelines and requirements imposed on their working conditions[.]" (*Id.*, p. 19). Plaintiffs add that Sales Representatives were all subject to the same essential duties, disciplinary policies, opportunity for profit and loss, and that Defendants controlled the "tools of the trade" necessary to make a sale. (*Id.*, pp. 19–21). In response, Defendants argue that it is not sufficient for Plaintiffs to simply raise common questions of law, and that the issue of "whether plaintiffs were employees cannot be resolved with common proof." (Dkt. No. 405, pp. 13–14).

Critically, what matters for commonality, "is not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Moreover, "[i]n cases where plaintiffs claim that defendants have misclassified potential class members as independent contractors, rather than employees, commonality is satisfied if the plaintiffs' employment status is 'a common question capable of being answered through classwide proof.'" *Griffith*, 2015 WL 1097327, at *3, 2015 U.S. Dist. LEXIS 30869, at *6 (citing *Ouedraogo v. A–1 Int'l Courier Serv., Inc.*, No. 12-CV-5651, 2014 WL 4652549, at *3–6, 2014 U.S. Dist. LEXIS 132156, at *10–11 (S.D.N.Y. Sept. 18, 2014)). Here, as discussed in detail above, the record is replete with material discrepancies among the Plaintiffs and their relationships with Defendants, that are directly relevant to resolving this litigation. Thus, the Court finds that Plaintiffs have failed to prove by a preponderance of the evidence that the factual questions about those relationships are sufficiently capable of classwide

proof to satisfy the requirement of commonality under Rule 23(a)(2). *See Saleem v. Corp. Transp. Grp, Ltd.*, 2013 WL 6061340, *4–6, 2013 U.S. Dist. LEXIS 163934, *17–28 (S.D.N.Y. Nov. 15, 2013) (rejecting Rule 23 class certification where plaintiff failed to show commonality given that resolution of the case would "require a fact-specific and [plaintiff]-specific examination of the degree of control that [defendant] exercised in fact."); *Ouedraogo*, 2014 WL 4652549, at *3–6, 2014 U.S. Dist. LEXIS 132156, at *10–11 (finding insufficient commonality where "classwide answers would be insufficient to determine the validity of each class members' claim to employee status in one stroke"); *Hernandez*, 2014 WL 5039431, at *7–8, 2014 U.S. Dist. LEXIS 139069, at *19–23 (holding that "class certification [wa]s inappropriate given that any [plaintiff's] case [would], at best, be a close question that [would] turn on considerations which do not admit of common and representative proof"). Accordingly, Plaintiffs' motion for class certification must be denied.

### ii. Rule 23(b) Requirements

Even assuming *arguendo* that Plaintiffs could satisfy all of the initial requirements for class certification under Rule 23(a), their motion for class certification would still fail because questions of law or fact common to class members do not predominate over the questions affecting only individual members, as required by Rule 23(b)(3). Defendants contend that the issue of whether Plaintiffs were independent contractors or employees involves numerous material issues that are highly individualized and not conducive to common proof. (Dkt. No. 405, pp. 31–33). Plaintiffs counter that "[t]he common legal question of misclassification, and the common questions of fact that will be made to determine its propriety predominate over any variation in their individual circumstances, including damages." (Dkt. No. 378, p. 27). Plaintiffs

also contend that "[t]he fact individualized damages calculation may be required does not defeat the predominance requirement." (*Id.*).

Notably, the predominance requirement is "far more demanding" than the commonality requirement under Rule 23(a), and it is not satisfied "simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "Where individualized questions permeate the litigation, those 'fatal dissimilarities' among putative class members 'make use of the class-action device inefficient or unfair.'" *In re Petrobras Securities*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 470 (2013)).

Here, relevant issues of material fact exist among the Plaintiffs and their employment relationships with Defendants, as discussed above. These pervasive dissimilarities are also fatal in the predominance analysis. In other words, Plaintiffs have failed to show that common issues predominate over individual issues as required by Rule 23(b), for the very same reasons that frustrated commonality under Rule 23(a)(2) and caused their bid for certification under the FLSA to fall short. *See Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37–38 (2d Cir. 2015) (affirming denial of class certification because common questions do not predominate over individual ones, given variations in the proposed class and the need for individual analysis of each plaintiff); *see also Hernandez*, 2014 WL 5039431, at *6–8, 2014 U.S. Dist. LEXIS 139069, at *15–21 (granting motion to decertify FLSA collective action and denying motion to certify state claims as a Rule 23 class action when the plaintiffs' testimony varied "significantly with respect to the degree of control relevant to determining their alleged status as employees" and

therefore "common questions do not predominate over individual questions as required under Rule 23(b)(3), largely for the reasons" the court stated in decertifying the FLSA collective action) (internal brackets omitted); *Tracy v. NVR, Inc.,* 293 F.R.D. 395, 400–01 (S.D.N.Y. 2013) (denying class certification where "the plaintiffs' claims—as well as any determinations to be made concerning damages—[were] too highly individualized to form the basis for a class action").

Relatedly, the Court finds that proceeding as a class would not offer superior resolution because the lack of common proof would require fact-intensive mini-trials and any judicial efficiencies are outweighed by the potential for procedural unfairness to Defendants. Accordingly, Plaintiffs' motion for Rule 23 certification of the proposed class under FLSA and NYLL is denied. *See Saleem*, 2013 WL 6061340, at *7, 2013 U.S. Dist. LEXIS 163934, at *28–30; *Shayler*, 2013 WL 772818, at *9, 2013 U.S. Dist. LEXIS 29540, at *27.

## VI.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion to Decertify Plaintiffs' Conditionally Certified FLSA Collective Action (Dkt. No. 377) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Motion for Class Certification under Rule 23 (Dkt. No. 345) is **DENIED**; and it is further

**ORDERED** that this action shall proceed on behalf of the named Plaintiffs only, and the claims of the Opt-In Plaintiffs are **DISMISSED WITHOUT PREJUDICE,** and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

26

**IT IS SO ORDERED.**

Date:   April 26, 2019
            Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge